UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAURICIO ABEL GUZMAN-JUAREZ,

Petitioner,

v.

CAMMILLA WAMSLEY, et. al.,

Respondents.

Case No. 26-cv-01791-TMC

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS

## I.   INTRODUCTION AND BACKGROUND

Petitioner Mauricio Abel Guzman-Juarez, a 29-year-old citizen of Guatemala, entered the United States without inspection approximately four years ago. Dkt. 1 at 5; Dkt. 6-2 at 2.  Since then, he has worked in the construction trade in Utah and has had no criminal history. *Id*.; Dkt. 6-2 at 4. On April 22, 2026, Immigration and Customs Enforcement ("ICE") agents were searching for a different individual at a construction site in St. George, Utah when they "observed several Hispanic males running toward a white Ford Expedition." Dkt. 6-2 at 3. In the standard I-213 form that is used to document an arrest, an ICE officer described his account of what happened next: "The males jumped into the vehicle and it sped off after seeing the ICE officers' vehicle. . . Officers followed the vehicle . . . . and moved in front of the target vehicle, forcing it to stop. Officers observed several mails [sic] jump out of the vehicle and begin running away. Officers

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

began to chase several males on foot. Officers located second individual [Petitioner] in the parking lot of [a nearby store]. [Petitioner] admitted to being a citizen of Guatemala and did not have immigration documents to allow him to be in the United States." *Id*. ICE agents arrested Petitioner and transported him to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he remains detained. *Id*.

On May 20, 2026, Petitioner had a bond hearing before an immigration judge ("IJ"). Dkt. 6-4 at 2. Petitioner was represented by counsel who filed a 62-page brief supported by numerous exhibits demonstrating Petitioner's ties to the community, including employment, multiple U.S. citizen family members, and a wife who all live in Utah. Dkt. 1-6 at 9-10. Petitioner's lawyer attended the bond hearing and has filed a declaration describing the proceedings. Dkt. 1-5. According to counsel, Petitioner testified at the bond hearing that contrary to what was written in the I-213, he did not run away when ICE officers approached his vehicle. Dkt. 1-5 ¶ 7. Instead, he testified that the ICE officers approached him with their guns drawn and that he remained in the car. *Id*. After hearing him testify, the IJ suggested that the officers could be produced as witnesses, and Petitioner's counsel represented that she would seek to question the officers if necessary. *Id*. ¶ 8.

The government presented no evidence at the bond hearing beyond the I-213 form. The IJ recorded his decision on a form that allowed him to check various boxes indicating the basis of the decision. *Id*. The IJ denied bond and checked boxes indicating two bases for his decision: first, that he lacked jurisdiction because Petitioner was mandatorily detained under *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), and second, in the alternative, if jurisdiction existed, the IJ detained Petitioner because he failed to show he was not a flight risk. *Id*. The form does not ask the IJ to supply reasons for the decision, and the IJ did not provide any. According to the declaration from Petitioner's immigration counsel, which has not been challenged by

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 2

Respondents, the IJ did not give any "factual explanation or individualized reasoning" for his decision at the hearing either. It is unclear from the record whether Petitioner has appealed the bond ruling to the Board of Immigration Appeals ("BIA). *See* Dkt. 7 ¶ 10. ICE initiated removal proceedings and on June 8, Petitioner submitted requests for relief from removal on several grounds. Dkt. 7 ¶ 10.

On May 22, 2026, Petitioner filed this petition for a writ of habeas corpus. Dkt. 1. On June 9, Respondents filed a return to the habeas petition, arguing that bond was properly denied because Petitioner's detention is mandatory under 8 U.S.C. § 1225(b), and in the alternative, that the IJ had found Petitioner to be a flight risk. Dkt. 6 at 4–17. On June 9, Petitioner filed his traverse. Dkt. 8. The habeas petition is now ready for review. For the reasons set forth below, the Court GRANTS the petition for writ of habeas corpus.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by the preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III.    DISCUSSION

### A.    Petitioner Is Detained Under 8 U.S.C. § 1226(a)

As an initial matter, the Court addresses whether Petitioner is detained mandatorily under 8 U.S.C. § 1225(b)(2), as found by the IJ who presided over Petitioner's bond hearing and as argued by Respondents in their return, or under 8 U.S.C. § 1226(a), which allows an IJ to exercise discretion and release certain detainees pending immigration proceedings. *See Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025).

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 3

On September 30, 2025, this Court granted summary judgment to members of a certified Bond Denial Class, defined to include the following individuals:

> All noncitizens without lawful status detained at the Northwest ICE Processing Center who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

*Rodriguez Vazquez,* 802 F. Supp. 3d at 1336. The Court issued the following declaratory relief:

> The Court declares that Bond Denial Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Court further declares that the Tacoma Immigration Court's practice of denying bond to Bond Denial Class members on the basis of § 1225(b)(2) violates the Immigration and Nationality Act.

*Id.*

Petitioner argues that he "falls squarely within the class of detainees addressed in *Rodriguez Vazquez.*" Dkt. 1 at 9.  While Respondents "do not concede that *Rodriguez Vasquez* was correctly decided, [they] do not oppose Petitioner being considered a member of the *Rodriguez Vazquez* Bond Denial class for purposes of this litigation." Dkt. 5 at 2. The Court agrees. It is undisputed that at some point in 2022, Petitioner entered the United States without inspection, was not apprehended upon arrival, and is not subject to detention under any of the disqualifying provisions set forth in *Rodriguez Vazquez*. The Court determined that similarly situated petitioners in *Rodriguez Vazquez* were entitled to a bond hearing, holding that the INA does not require mandatory detention of noncitizens who meet the three prongs set forth in the definition of class membership. *See* 802 F. Supp. 3d at 1336. Accordingly, the Court concludes that Petitioner is detained under 8 U.S.C. § 1226(a), and the IJ had jurisdiction to release Petitioner pending resolution of his underlying immigration proceedings.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 4

## B.    Prudential Exhaustion Is Not Required

Ordinarily, before turning to federal court, a litigant must first pursue all options available through the appropriate administrative agency. *See, e.g., Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). Respondents argue that Petitioner has failed to exhaust his administrative remedies because his appeal of the bond denial to the BIA either remains pending, or was never filed, so the Court should deny his petition on prudential exhaustion grounds. Dkt. 5 at 5–9. Petitioner contends that the Court should waive any exhaustion requirement for several reasons, but most convincingly because exhaustion would be futile. Dkt. 8 at 3-6.

In a habeas proceeding, "[t]he exhaustion requirement is prudential, rather than jurisdictional." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). To determine whether a petitioner must exhaust his administrative remedies, a court typically applies three factors set forth in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007): "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id*. But even if these factors weigh in favor of exhaustion, several exceptions permit a court to waive the requirement: Exhaustion may be excused "where administrative remedies are inadequate or not efficacious, *pursuit of administrative remedies would be a futile gesture*, irreparable injury will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981) (emphasis added); *see also Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("[W]here the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required." (citation modified)).

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 5

Here, the Court need not go through the exercise of applying the *Puga* factors because even if they weighed in favor of exhaustion, requiring Petitioner to wait until his appeal (if filed) to the BIA is resolved would unreasonably prolong his detention[1] and very likely prove to be futile. Numerous federal courts across the country, including in this district, have found that an appeal to the BIA of the jurisdictional issue that was the primary basis here for the denial of bond is futile, because the BIA continues to adhere to the position it adopted in *Matter of Hurtado*. *See, e.g., Segura Serrano, v. Scott, et al.*, Case No. 2:26-CV-01268-LK, 2026 WL 1469639, at *3–4 (W.D. Wash. May 26, 2026); *see also Jacobo Ramirez v. Noem*, 817 F. Supp. 3d 1037, 1050 (D. Nev. 2025) (finding exhaustion futile because the BIA would uphold the petitioner's bond pursuant to *Hurtado*). And in cases before this Court where a Petitioner did appeal an alternative flight risk or dangerousness determination to the BIA, the agency declined to address that issue after upholding detention on the jurisdictional ground. *See, e.g.*, *Vazquez Garcia v. Scott*, No. 2:26-cv-01430-TMC, 2026 WL 1723674, at *2 (W.D. Wash. June 15, 2026).

The Court notes two other arguments made by Respondents regarding exhaustion. First, they argue that "the recent surge of 8 U.S.C. § 1226(a) bond hearing challenges filed in this Court demonstrates that allowing further relaxation of the exhaustion requirement would continue to encourage other detainees to directly appeal their bond determinations to federal district court." Dkt. 5 at 7. Respondents confuse cause and effect. The "relaxation of the exhaustion requirement" is not the engine driving the influx of habeas petitions in this district; it is the lack of a meaningful or timely administrative remedy that leads petitioners—who face years of imprisonment if they contest their removal proceedings—to turn to the habeas power of the federal courts.

---

[1] As this Court observed in *Rodriguez Vazquez*: "In 2024 . . . data showed an average processing time of 204 days for [BIA] bond appeals." 802 F. Supp. 3d at 1307.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 6

Second, Respondents argue that "the mere passage of time or the delay inherent in the administrative process is insufficient to establish the type of unique, irreparable harm necessary to waive prudential exhaustion." Dkt. 5 at 9 (*citing Martinez*, 2025 WL 2689844, at *6 ). Respondents fail to acknowledge that the harm suffered by Petitioner is not the "the mere passage of time." It is the passage of time *while detained*—separated from family, employment, and the opportunity to better prepare for immigration proceedings—that causes needless and irreparable harm when a noncitizen could otherwise be supervised on bond. Petitioner has shown that he has suffered and will continue to suffer harm in each of these areas. Though he does not have children, Petitioner has a stepmother, wife, and younger siblings who all rely on him to some extent for support. Dkt. 1 at 16. That is sufficient to meet the standard articulated by case law. *See Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

In sum, considering the futility of any bond appeal to the BIA under these circumstances, "exhaustion is not required." *Vasquez-Rodriguez*, 7 F.4th at 896. The Court now turns to the question of whether the IJ abused his discretion in denying bond.

## C.    The IJ Abused His Discretion by Denying Bond

The Court's review of a bond determination by an IJ is limited. While factual questions are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Martinez v. Clark*, 124 F.4th 775, 782 (9th Cir. 2024) (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). While a court may not review underlying factual determinations such as "'credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides,'" it may review mixed questions of law and fact, "even when [they] are primarily factual[.]" *Id*. at 782–84 (quoting *Wilkinson*, 601 U.S. at 225). Such determinations are reviewed for an abuse of

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 7

discretion. *Martinez*, 124 F.4th at 784. Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the immigration judge "applied the correct legal standard." *Id.* at 785.

Under BIA precedent, to determine whether a noncitizen is a danger to the community or a risk of flight, an IJ is supposed to weigh nine factors: (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, and whether they may entitle the noncitizen to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States. *Id*. at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

An IJ's application of the above standard "is malleable and involves agency discretion," but a federal court can still "assess whether an IJ correctly applied the [legal] standard to a given set of facts." *Id*. (quoting *Wilkinson*, 601 U.S. at 221); *see also Soriano v. Hernandez*, --- F. Supp. 3d ---, 2026 WL 969764, at *3 (W.D. Wash. Apr. 10, 2026) (finding jurisdiction to review IJ's bond denial based on flight risk finding). Accordingly, Petitioner's allegation in his habeas petition—that the IJ abused his discretion when he determined that Petitioner was a flight risk without any reasoning—presents a mixed question of fact and law that the Court has jurisdiction to review.

In the context of immigration appeals, the "BIA abuses its discretion when it acts 'arbitrarily, irrationally, or contrary to the law,' and 'when it fails to provide a reasoned

explanation for its actions.'" *Tadevosyan v. Holder*, 743 F.3d 1250, 1253 (9th Cir. 2014) (quoting *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005)). Similarly, the Court concludes that the IJ here abused his discretion by failing to provide any reasoned explanation for his bond denial in the face of substantial evidence supporting Petitioner's eligibility for bond.

Petitioner presented ample evidence to the IJ that he is not a flight risk and that he has strong ties to the United States. *See* Dkt. 1-6 at 9–10. First, he continues to pursue multiple avenues through the immigration system to remain here. *Id*. at 8. Second, he has steady employment and many U.S. citizen and other family members in the United States. *Id*. at 5–6. He has no criminal history. And to mitigate any risk that he might flee, Petitioner's family has offered to post a bond in the amount of $3,000 to $5,000, to ensure his compliance with future hearings and court dates. *Id*. at 8. The only evidence presented by the government in opposing bond was the disputed assertion in the I-213 form that Petitioner briefly fled when ICE agents stopped the vehicle in which he was a passenger. *See* Dkt. 6-2; Dkt. 7 ¶ 10.

But the IJ denied bond without resolving that dispute, determining Petitioner's credibility, or otherwise weighing any of the evidence or *Guerra* factors. Respondents contend that due process does not require the IJ to make written findings or a contemporaneous recording of the hearing. *See* Dkt. 5 at 10–11. They note that "IJs typically issue oral rulings in bond proceedings and only provide written findings if the decision is appealed," and argue that the Court "should not penalize Respondents for failing to provide a contemporaneous record that neither agency policy nor binding precedent requires." *Id.* at 11.

But there is a difference between a lack of written findings and a lack of any findings at all. Petitioner's immigration counsel has provided a sworn declaration that the IJ provided no oral explanation for his ruling. Dkt. 1-5. Respondents have not contested this point. And under longstanding Ninth Circuit immigration precedent, the failure to provide any reasoned

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 9

explanation is an abuse of discretion. *See Tadevosyan*, 743 F.3d at 1253. Respondents' assurance that "[h]ad Petitioner filed an appeal, the IJ would have provided a written memorandum detailing his findings" does not cure this fundamental legal error. *See* Dkt. 5 at 12. It cannot be that a noncitizen facing years of detention may only learn the reasons for his incarceration if he chooses to appeal it, particularly when that appeal will likely prove futile. More fundamentally, how can the detainee make an informed decision whether to appeal if the IJ does not explain any reasons for his detention?

In sum, the Court concludes that the IJ abused his discretion by failing to give any reasoned explanation for his decision at the hearing. The IJ failed to provide a rationale for his finding of flight risk and failed to acknowledge, much less weigh, the substantial evidence presented by Petitioner. By failing to accord Petitioner the process due to him, the IJ abused his discretion and violated Petitioner's Fifth Amendment rights. *See Minango v. Bondi*, No. 2:26-CV-00235-ART-BNW, 2026 WL 1257028, at *4 (D. Nev. May 6, 2026) (finding a due process violation where the IJ "failed to apply the correct legal standard as required by due process"); *Gimenez v. Hernandez*, No. 2:26-CV-00966-GJL, 2026 WL 1156075, at *6 (W.D. Wash. Apr. 29, 2026) ("Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts in this and other districts have found due process violations where IJs abuse discretion in bond determinations." (collecting cases)).

## IV.   CONCLUSION

For the reasons explained above, the Court ORDERS as follows:

1. The petition for writ of habeas corpus (Dkt. 1) is GRANTED.

2. Within ONE day of this Order, Respondents must release Petitioner Mauricio Abel Guzman-Juarez from custody with reasonable conditions of supervision.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 10

3.      Upon his release, Respondents must return to Petitioner any personal property, including any personal identification document (other than a passport) and any employment authorization document.

4.      Respondents shall file a status report by July 6, 2026, confirming that Petitioner Mauricio Abel Guzman-Juarez has been released.

Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are encouraged to meet and confer on any fee request before filing a petition.

Dated this 2nd day of July, 2026.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 11